**IN THE UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| OLGA ALMANZA, | ) | |
| | ) | COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JUAN MANUEL ALMANZA and | ) | DAMAGES OVER $75,000 |
| MARY ROCIO CANAS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | JURY DEMAND |

## COMPLAINT

NOW COMES PLAINTIFF OLGA ALMANZA ("Plaintiff" or "Olga"), by and through her attorneys, Dillon Grube LLC, and files this COMPLAINT against DEFENDANTS JUAN MANUEL ALMANZA ("Juan") and MARY ROCIO CANAS ("Mary") (collectively, referred to as "Defendants"), stating as follows:

### NATURE OF ACTION

1.     This is an action for breach of contract, unjust enrichment, conversion, and fraudulent misrepresentation/fraudulent inducement all arising from Defendants' actions directed toward Plaintiff.

2.     By this action, Plaintiff seeks compensatory damages, punitive damages, and all other relief to which she may be entitled as a matter of law.

### PARTIES

3.     Plaintiff Olga Almanza is a citizen of the State of Wisconsin and a resident of Green County.

4. Upon information and belief, Defendant Juan Almanza is a resident of the State of Nevada and resides within the City of Henderson, Clark County, Nevada, and works as a pastor at Caf Iglesia Paris, 2010 Haren Drive, Henderson, Nevada 89011.

5. Upon information and belief, Defendant Mary Rocio Canas is a resident of the State of Nevada and resides within the City of Henderson, Clark County, Nevada, and works as a pastor at Caf Iglesia Paris, 2010 Haren Drive, Henderson, Nevada 89011.

## JURISDICTION AND VENUE

6. Under 28 U.S. Code Section 1332, this Court may exercise diversity jurisdiction over Defendant Juan Manuel Almanza because this is a civil action where the matter in controversy exceeds the value of $75,000 and is between citizens of different states.

7. Under 28 U.S. Code Section 1332, this Court may exercise diversity jurisdiction over Defendant Mary Rocio Canas because this is a civil action where the matter in controversy exceeds the value of $75,000 and is between citizens of different states.

8. Venue is proper in this judicial district because the transaction or some part of the transaction at issue occurred in this judicial district. 28 U.S. Code Section 1391(b)(2).

9. Defendants engaged in intentional conduct that has harmed Plaintiff in this judicial district.

10. Plaintiff has been injured by Defendants' conduct and suffered damages resulting therefrom in this judicial district.

## FACTUAL BACKGROUND

11. Juan and Olga are siblings while Mary is Juan's wife and Olga's sister-in-law.

12. Juan and Mary work as pastors at the Caf Iglesia Parish (the "Church").

13. On or around 2020, the Church required reconstruction, maintenance, and/or repair.

14.    Defendants asked Olga to provide financial support to Defendants to use towards the Church's reconstruction.

15.    Juan, Mary, and Olga (collectively, referred to as the "Parties") discussed the arrangement needed for the Church's reconstruction.

16.    During these discussions, the Parties agreed that Olga would loan $100,000 to Defendants for use towards the Church's reconstruction.

17.    Initially, Juan and Mary agreed to pay Olga back during the Spring of 2020, only two months after the initial loan, after they were to refinance the Church.

18.    The Parties agreed that Defendants would pay Olga back the full $100,000 without interest.

19.    All Parties agreed to these terms.

20.    With agreement to these terms, Olga wrote a check to Defendants for $100,000 to be used towards the construction and repair of the Church on April 27, 2020 (the "Loan").

21.    Despite the agreement to pay Olga back in the Spring of 2020, Mary and Juan claimed that the refinancing of the Church kept changing and getting pushed back.

22.    As a result, Juan and Mary did not pay Olga back.

23.    In 2022, Olga emphasized she required repayment before her child started college, or as soon as Defendants can begin making repayments to her.

24.    Upon information and belief, the refinancing of the Church had already been completed despite no repayment being made to Olga.

25.    As of April 22, 2026, no repayment for the Loan has been made to Olga.

*Donations to the Church*

26.    Previously, Olga donated to the Church to support Defendants.

3

27. Olga labeled each donation payment by writing "donation" on the check memorandum, wire transfer caption, or Zelle payment description.[1]

28. Olga differentiated between donations and loans provided to the Church.

29. The Loan was never considered a donation by any of the Parties.

30. Olga has not received any receipts related to her donations to the Church.

31. As a result, Olga has not been able to accurately assess her taxes.

*Communications Demonstrating Intent to Repay Ms. Almanza*

32. For years, Olga repeatedly demanded repayment by Defendants for the Loan.

33. Defendants always told her that they would repay her soon.

34. Olga's daughter planned to start college in Fall 2023.

35. Olga planned to use the $100,000 loaned to the Defendants and never repaid for her child's college tuition.

36. As such, Olga increased her efforts and again demanded repayment of the Loan.

37. On Wednesday April 26, 2023, Olga sent Defendants an email titled "Debt" which stated [2]:

> Could you please ask the church to return half of the 100,000 urgently and the other 50,000 in 6 months. I do not charge any interest to the church but I urgently need the cash to pay back this loan...[2]

38. Defendants replied, "Ok sister, we will be working on this and I will let you know soon. Thanks."

---

[1] Other payment captions included "donacion pastores", "CAF Donation", "donacion", etc.
[2] The following emails have been translated from Spanish. Any differences in the original text are due to the translation.

39.     Both Defendants have access to the same email account.

40.     This response clearly indicated that Defendants understood repayment of the Loan was necessary and expected.

41.     Again, on May 3, 2023, Olga sent Defendants an email titled, "Urgent" which stated the following:

> **I need the 50,000 urgently. I need to pay for [Olga's daughter's] semester.** I only have until next week. Please ask for an equity loan or something like that against any of your properties. I already took out an equity loan against my house to pay for Andres' [Defendants' son] college and Coco's [Olga's dog] expenses. They won't let me take out more.

42.      Two hours later, Defendants replied to this email:

> Ok sister, we are working on this with the church, we have already requested loans, we are waiting for a response. We have also already told the accountant to make the correction, **that this money is a loan and not a donation,** he said that it is okay that he makes the respective report to the IRS, because in the letter that was given to him as a donation he included it as a donation, not as a loan. As soon as they confirm it, we hope it will be very soon, we will let you know. Thank you.

43.     In this email, Defendants clearly stated their understanding that the Loan was not a donation.

44.     Olga confirmed: "I already checked my taxes. I never declared it as a donation. It was a loan."

45.     Further on May 13, 2023, Olga sent another email to Defendants, titled "Loan," which stated:

> **Please, I need the 50,000 urgently. I told you I needed it this week.** Send me my money as soon as possible. At no time did I tell you that this was a donation. **You told me that you would return all the money to me 3 years ago and still nothing**.

I am not charging you interest either. **I need my money right now.** The other 50,000 can be paid to me in September. Although I prefer that you pay me all at once. (emphasis added)

46.    On May 14, 2023, Defendants replied: "Olga, don't worry, we're working on it. Sometimes the process doesn't go as fast as we want, but as soon as they give us the payment, your money will go. Same for everything, thank you."

47.    For at least three years, Defendants told Olga that they would repay Olga for the Loan, but instead misled Olga regarding the repayment of the Loan and did not pay her back.

48.    On June 8, 2023, Olga emailed:

I need the money because I don't have the means to pay for Celesta's college. It's been almost two months since I sent you the message telling you about the urgency and you're just making fun of us...**Please understand that you refinanced the church and you didn't pay me...The agreement was that the money would be returned to me with the refinancing of the church. A line of credit against a house only takes a couple of days to process.** (emphasis added)

49.    The next day, Juan stated: "...[n]ow I clarify that you will be paid as soon as possible, as far as I'm concerned it would be yesterday."

50.    Despite promises and a duty of repayment, Defendants failed to repay the Loan.

*Extravagant Purchases by Defendants*

51.    Prior to Olga providing the Loan, Defendants purchased a new house, approximately 5,000 square feet, in Nevada ("New House").

52.    Defendants hid the purchase of the New House from Olga to induce her to loan the money.

6

53. Before the purchase of the New House, Juan and Mary owned a smaller house ("Old House").

54. Initially, when Olga discovered Defendants' purchased the New House a few years after the Loan was provided, Defendants informed Olga that they used the proceeds from the sale of the Old House to purchase the New House.

55. Upon information and belief, Defendants lied about how the New House was purchased to cover up the use of Olga's money.

56. However, Defendants did not sell the Old House.

57. The Old House is currently being rented by an unknown third-party and Defendants receive rental payments for this property.

58. When Olga discovered the Old House had not been sold, she suggested Defendants' sell the Old House or New House to alleviate some of their financial burdens, including the Loan repayment.

59. Defendants refused to sell either property.

60. Upon information and belief, Defendants and their immediate family have taken trips to Hawaii every year since the Loan was provided in 2020.

61. Despite these extravagant purchases, Defendants still requested Olga to pay them to help with the construction and repairs of the Church and have failed to repay Olga in any capacity.

*Loans for Childs' Education*

62. As a result of Defendants' failure to repay, Olga was forced to find alternative means to pay for her daughter's college tuition.

63. First, Olga's current boyfriend loaned her some money to assist with her daughter's education.

64. Second, Olga was forced to pull dividends from one of her corporations to pay the rest of her daughter's college tuition.

65. As a result of pulling dividends out, Olga incurred severe tax penalties and placed her business under financial constraints and limitations.

66. Third, Olga received personal loans to assist in paying for her daughter's college tuition which she will ultimately have to pay back.

67. If not for Defendants' failure to repay the Loan, Olga would not have needed to (1) receive money from her boyfriend; (2) receive dividends from her small business; and (3) take out personal loans to assist with her children's education.

68. Defendants fabricated new reasons they cannot repay the Loan.

69. On December 23, 2024, Olga's prior counsel sent a demand letter to Defendants, requesting repayment of the Loan.

70. On or around January 3, 2025, Defendants responded requesting time to obtain legal representation.

71. As of March 13, 2025, Olga's prior counsel had not heard from Defendants or their counsel.

72. Defendants have yet to repay any portion of the Loan to Olga.

73. While Olga has struggled to pay her own child's tuition, Defendants' actions clearly indicate no effort to provide any repayment to Olga.

74. In fact, Defendants' actions demonstrate a conscious effort to not pay Olga back.

<u>COUNT ONE</u>
<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
<u>FAILURE TO REPAY LOAN/BREACH OF CONTRACT</u>
*(Against Defendants)*

75.     Plaintiff hereby incorporates by reference Paragraphs 1 through 74 above as though fully set forth herein.

76.     Defendants informed Olga that the Church required reconstruction, maintenance, and repair.

77.     Defendants informed Olga that they required financial assistance for the Church's reconstruction.

78.     Olga offered a loan to Defendants for $100,000 to help with reconstruction of the Church.

79.     Initially, the Parties agreed that Olga would be repaid in the Spring of 2020, two months after the Loan was provided, after they refinanced the Church.

80.     All Parties agreed to these terms of the Loan.

81.     Defendants accepted the Loan and its repayment terms.

82.     All Parties entered in a valid and enforceable contract regarding the Loan.

83.     Olga wrote and provided $100,000 to Defendants to be used for reconstruction the Church.

84.     Defendants failed to repay the Loan within the agreed time period or thereafter.

85.     Defendants breached the contract.

86.     Olga suffered damages as a direct result of Defendants' breach.

9

87. Defendants' failure to repay the Loan forced Olga to find other means to pay for her child's education.

88. In order to pay for her child's education, Olga (1) received money from her boyfriend; (2) took out dividends from her small business; and (3) took out personal loans.

89. As a result of the dividend withdrawal, Olga's small business suffered severe tax penalties and consequences.

90. Olga is required to pay back the personal loans she took out.

91. Defendants withheld Olga's $100,000 from her, restricting her access and use of her money.

92. Olga incurred and continues to incur financial hardship as a result of Defendants' failure to repay.

93. Defendants clearly understood the repayment terms of the contract as demonstrated through the Parties' email communications.

94. Despite repeated demands, Defendants failed to provide any repayment.

95. Based on the foregoing, Defendants' actions, statements, and lack of repayment constitute a breach of contract.

96. WHEREFORE, Olga seeks general, compensatory, and punitive damages resulting from Defendants' breach of contract. This includes, but is not limited to, full repayment of the $100,000 loan, as well as reimbursement for the severe tax penalties from the dividend withdrawal due to Defendants' failure to repay.

## COUNT TWO
## AS AND FOR A SECOND CAUSE OF ACTION

10

UNJUST ENRICHMENT
*(Against Defendants)*

97.    Plaintiff hereby incorporates by reference Paragraphs 1 through 96 above as though fully set forth herein.

98.    Olga and Defendants entered into a valid and enforceable contract for the Loan.

99.    Olga loaned $100,000 to Defendants.

100.    Defendants failed to pay Olga back.

101.    Defendants unjustly retained the $100,000 loan provided by Olga.

102.    The retention of the Loan injured Olga and forced her to receive alternative means to pay for her child's education.

103.    In order to pay for her child's education, Olga (1) received money from her boyfriend; (2) took out dividends from her small business; and (3) took out personal loans.

104.    Defendants' retention of the $100,000 loan violates the fundamental principles of justice, equity, and good conscience.

105.    Based on the foregoing, Defendants' actions, statements, and lack of repayment constitute unjust enrichment.

106.    The foregoing conduct constitutes unjust enrichment.

107.    WHEREFORE, Olga seeks general, compensatory, and punitive damages resulting from Defendants' unjust enrichment. This includes, but is not limited to, full repayment of the $100,000 loan, as well as reimbursement for the severe tax penalties from the dividend withdrawal due to Defendants' failure to repay.

COUNT THREE
AS AND FOR A THIRD CAUSE OF ACTION
CONVERSION
*(Against Defendants)*

108. Plaintiff hereby incorporates by reference Paragraphs 1 through 107 above as though fully set forth herein.

109. Olga and Defendants entered into a valid and enforceable contract relating to the Loan.

110. Olga loaned $100,000 to assist with the Church's reconstruction.

111. Defendants agreed to pay Olga back within a specified time period.

112. Defendants failed to pay Olga back with that time period.

113. Defendants used and benefitted from Olga's Loan.

114. Defendants exercised control over the $100,000.

115. Defendants restricted Olga's access to the $100,000 and withheld the money from her possession without any attempt to repay her.

116. Olga owned the $100,000 and expected repayment .

117. The Parties agreed that Defendants would repay Olga the full $100,000.

118. Upon information and belief, Defendants refinanced the Church and did not repay Olga.

119. The lack of repayment forced Olga to receive alternative means to pay for her child's education.

120. In order to pay for her child's education, Olga (1) received money from her boyfriend; (2) took out dividends from her small business; and (3) took out personal loans.

121. As a result of the dividend withdrawal, Olga's small business suffered severe tax penalties and consequences.

122. Olga is required to pay back the personal loans she took out.

123. Defendants had no right to retain the Loan.

124. Defendants' retention of the Loan has been unauthorized and without Olga's consent.

125. Olga requested multiple times for Defendants to repay the Loan.

126. Defendants stated they intend to repay the Loan; however, Olga has not received any repayment.

127. With the past few years, Defendants purchased a New House and expensive vacations but have failed to make any monetary repayments related to the Loan.

128. Based on the foregoing, Defendants' actions, statements, and lack of repayment constitute conversion.

129. The foregoing conduct constitutes unjust conversion.

130. WHEREFORE, Olga seeks general, compensatory, and punitive damages resulting from Defendants' conversion. This includes, but is not limited to, full repayment of the $100,000 loan, as well as reimbursement for the severe tax penalties from the dividend withdrawal due to Defendants' failure to repay.

<u>COUNT FOUR</u>
<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>
FRAUDULENT MISREPRESENTATION/ FRAUDULENT INDUCEMENT
*(Against Defendants)*

131.    Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above as though fully set forth herein.

132.    Olga and Defendants entered into a valid and enforceable contract relating to the Loan.

133.    Olga loaned $100,000 to assist with the Church's reconstruction.

134.    Defendants failed to repay the Loan.

135.    Upon information and belief, Defendants never intended to repay the Loan.

136.    Defendants continually stated that they would repay the loan.

137.    Defendants understood Olga required repayment for her child's tuition payments.

138.    Defendants induced Olga to make the Loan by stating they would repay the Loan.

139.    Defendants misrepresented their financial hardship, exampled by the purchase of the New House and expensive family vacations.

140.    Upon information and belief, Defendants utilized Church donations to purchase the New House.

141.    Defendants misrepresented the status of the Old House and received rental income from that property.

142.    Upon information and belief, Defendants did not inform Olga of these details knowing she would not provide the Loan with these facts.

143.    Defendants agreed to repay the Loan.

144. Initially, Defendants agreed to repay Olga in the Spring of 2020.

145. Defendants intentionally misled Olga in order to obtain the Loan.

146. Defendants stated orally and via email that they would repay the Loan.

147. Olga relied on these statements and provided the Loan to assist with the reconstruction/maintenance of the Church.

148. Olga believed that her brother and sister-in-law would repay the Loan.

149. Defendants understood that Olga needed the loan to be repaid so that she could use the funds for her child's education.

150. The failure to repay the Loan damaged Olga.

151. Upon information and belief, Defendants refinanced the Church and did not repay Olga.

152. The lack of repayment forced Olga to receive alternative means to pay for her child's education.

153. In order to pay for her child's education, Olga (1) received money from her boyfriend; (2) took out dividends from her small business; and (3) took out personal loans.

154. As a result of the dividend withdrawal, Olga's small business suffered severe tax penalties and consequences.

155. Olga is required to pay back the personal loans she took out.

156. But for Defendants' misrepresentations, Olga would not have been forced to seek alternative means to pay for the child's education.

157. Defendants purchased the New House instead of repaying Olga.

158. Defendants lied about how they purchased the New House.

15

159.   Defendants lied about the status of the Old House.

160.   Defendants lied about their overall financial situation.

161.   Defendants continue to mislead and misrepresent that they will repay Olga.

162.   Upon information and belief, Defendants never intended to repay Olga.

163.   Upon information and belief, part or all of the Loan may have been used to for other means than refinancing the Church.

164.   Based on the foregoing, Defendants' actions, statements, and lack of repayment constitute fraudulent misrepresentation.

165.   Olga seeks general, compensatory, and punitive damages resulting from the Defendants' fraudulent misrepresentation. This includes, but is not limited to, full repayment of the $100,000 loan, as well as reimbursement for the severe tax penalties from the dividend withdrawal due to Defendants' failure to repay.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PLAINTIFF OLGA ALMANZA accordingly and respectfully pray for judgment against DEFENDANT JUAN MANUEL ALMANZA and DEFENDANT MARY ROCIO CANAS as follows:

A.   That Plaintiff Olga Almanza be awarded general damages in an amount to be determined at trial;

B.   That Plaintiff Olga Almanza be awarded compensatory damages in an amount to be determined at trial;

C.   That Plaintiff Olga Almanza be awarded punitive damages in an amount to be determined at trial; and

D.      That Plaintiff Olga Almanza be awarded any such other and further relief as this

Court may deem just and proper or to which Plaintiff may be entitled as a matter of law and equity.

Dated:  April 27, 2026.

DILLON | GRUBE

Electronically signed by
/s/ Katharine Grafft
Katharine M. Grafft [1116124]
DILLON & GRUBE LLC
Attorneys for Plaintiff

**Mailing address:**
One Parker Place, Suite 715
Janesville, WI, 53545
Tel: 608.373.5560
Fax: 608.373.5561
kgrafft@dillongrubelaw.com

17